# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

In the Matter of the Seizure of:

All funds in Veridian Credit Union, banking account number █████8581

Case No. 22-SW-00755-W-WBG

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Aaron Volk, having been duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been employed as a sworn officer with the FBI since January 6, 2019. Prior to serving in the FBI, I oversaw investigations of criminal violations of the Uniform Code of Military Justice for six and a half years as a Security Forces officer in the United States Air Force. I am currently assigned to the Kansas City, Missouri, Field Office, Complex Financial Crimes Squad. Throughout my career as an FBI Agent, I have primarily investigated complex financial crimes, including Title 18, United States Code, Sections 1344 (Bank Fraud), 1343 (Wire Fraud), 1956 and 1957 (Money Laundering), 1341 (Mail Fraud), 513 (Securities Fraud), and 1028A (Aggravated Identity Theft). The crimes I have investigated include embezzlement, fraudulent investment schemes, bank fraud, aggravated identity theft, and money laundering. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. At the Basic Field Training Course at Quantico, Virginia, I received formal training on the statutes governing financial crimes, the common methods of commission of financial crimes, and the techniques used to launder money. I have attended various in-person and online training courses and conferences as a Special Agent, which have educated me on current methods and trends associated with the

commission of financial crime.

2. The facts stated in this Affidavit are based upon personal knowledge, information received from other investigators, financial institutions, and from the review of records and files pertaining to this on-going investigation. Because this Affidavit is made for the limited purpose of obtaining issuance of a seizure warrant, I have not set forth each and every fact learned during the course of this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for issuance of the seizure warrant sought herein.

3. Based upon the facts set forth in this affidavit, I submit that there is probable cause to believe that Callaway County, Missouri, is the victim of a fraudulent business email compromise scheme ("BEC") and transferred nearly one million dollars to a Bank of America ("BoA") account ending in 9099, believing the account belonged to a company that performed construction work for Callaway County, when it was, in fact, controlled by an unrelated individual.

4. Based upon the facts set forth in this affidavit, I submit that there exists probable cause to support the issuance of the requested seizure warrants for the following account held at Veridian Credit Union. Based on the facts set forth in this Affidavit, probable cause exists to believe that the following property is traceable to proceeds of wire fraud, in violation of 18 U.S.C. § 1343, and is subject to seizure under both the civil seizure statute, 18 U.S.C. § 981(b), as well as the criminal seizure statutes, 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f):

> Contents at Veridian Credit Union **banking account number ("Subject Account")** ▮▮▮▮**8581**, in the amount of $656,345.15.

located at Veridian Credit Union, 6525 Chancellor Drive, Cedar Falls, Iowa, 50613.

## Investigation To Date

5. Callaway County contracted with Little Dixie Construction ("Little Dixie"), a construction company based in Columbia, Missouri, to provide construction services. In or around

August 2021, Little Dixie's business email account was compromised. On August 9, 2021, an unknown subject sent an email using Little Dixie's email account to the Callaway County Board of Commissioners and an employee of UMB Bank providing changes to Little Dixie's ACH/Direct Deposit Bank account information and requesting that future payments be remitted to the new account. The email provided direct deposit account information that corresponded to a BoA account ending in 9099.

6. On August 11, 2021, Callaway County initiated a scheduled ACH wire from its UMB Bank account to the BoA account ending in 9099 for $993,498 as payment for recent construction work. On August 30, 2021, Callaway County initiated a second ACH wire to the BoA account ending in 9099 for $538,712.36 as payment for additional construction work. Callaway Country initiated these funds transfers believing that the bank account to which they would be deposited belonged to Little Dixie.

7. The August 11 transfer of $993,498 was processed by BoA and credited to the account. The August 30 transfer of $538,712.36 was returned to UMB Bank with the code "Account Closed."

8. On September 3, 2021, a fraud investigator for UMB Bank contacted the FBI to report that UMB believed that UMB and its customer, Callaway County, were the victims of a BEC scheme. Specifically, UMB reported that the account ending in 9099, which Callaway County and UMB believed was associated with Little Dixie, was, in fact, registered to ████ ████, an individual residing in Des Moines, Iowa.

9. A copy of the UMB account statement for Callaway County reflects the two ACH wire disbursements to what Callaway County believed was Little Dixie's bank account.

**Figure 1**

| Date | Description | Units | Cash | Cost |
|---|---|---|---|---|
| | **Beginning Balance** | 0.00 | | 8,417,864.80 |
| 08/02/2021 | Sweep Income<br>Morgan Stan Inst'l Liq Gov't - I 8302 | | 190.10 | |
| 08/02/2021 | Sweep Purchase<br>Morgan Stan Inst'l Liq Gov't - I 8302<br>Trade 08/02/2021 | 190.1 | (190.10) | 190.10 |
| 08/11/2021 | Miscellaneous Disbursement<br>To Little Dixie Construction Co LLC For UMB BANK AS FIDUCIARY<br>Pymt per construction reqest recd | | (993,498.00) | |
| 08/11/2021 | Sweep Redemption<br>Morgan Stan Inst'l Liq Gov't - I 8302<br>Trade 08/11/2021 | (993,498) | 993,498.00 | (993,498.00) |
| 08/30/2021 | Miscellaneous Disbursement<br>To Little Dixie Construction Co LLC For UMB BANK AS FIDUCIARY<br>Pymt per construction reqest recd | | (538,712.36) | |
| 08/30/2021 | Sweep Redemption<br>Morgan Stan Inst'l Liq Gov't - I 8302<br>Trade 08/30/2021 | (538,712.36) | 538,712.36 | (538,712.36) |
| | **Ending Balance** | 0.00 | | 6,885,844.54 |

Account Name: Callaway County MO COPS SRS 2020
Statement Period: Aug. 1 - Aug. 31, 2021
Page 6 of 6

10. UMB provided the following additional details for the initial $993,498 transfer on August 11, which was processed by BoA the following day, on August 12, 2021:

**ACH Credit**
Date: August 12, 2021
Amount: $993,498
Remitting Account: █████1898
Remitting Bank: UMB Bank
Receiving Account: █████9099
Receiving Bank: Bank of America

11. BoA records reflect that ████'s account balance prior to the transfer of funds from Callaway County was $28.69. On August 13 and 14, 2021, respectively, ████ withdrew $5,200 in cash and made a $112.90 debit card purchase using funds from the BoA account ending in 9099. On August 13, 2021, ████ also transferred $975,000 to a savings account, but transferred the funds back to the BoA account ending in 9099 three days later.

Figure 2

| | 9099 | PER | $993,526.69 | 8/12/2021 | $993,498.00 | | ACH | C | UMB-KANSAS CITY DES:TRUST DEPT ID:154655.2 493309 | INDN:U |
|---|---|---|---|---|---|---|---|---|---|---|
| | 9099 | PER | $13,326.69 | 8/13/2021 | | $975,000.00 | Transfer | D | Agent Assisted transfer to Sav 3968 | Confirmation# 29 |
| | 9099 | PER | $13,326.69 | 8/13/2021 | | $5,200.00 | Cash | D | IA TLR cash withdrawal from CHK 9099 | Banking Ctr ING |
| | 9099 | PER | $0.00 | 8/14/2021 | | $112.90 | Debit Card | D | HY-VEE DES MOI 08/14 #000242187 PURCHASE | HY-VEE DES |
| | 9099 | PER | $0.00 | 8/16/2021 | $975,000.80 | | Transfer | C | Agent Assisted transfer from SAV 3968 | Confirmation# 1 |
| | 9099 | PER | $0.00 | 8/16/2021 | $0.01 | | Other | C | Interest Earned | |
| | 9099 | PER | $0.00 | 8/16/2021 | | $988,009.60 | Cash Check | D | Customer Withdrawal Image | |

12. BoA records further reflect that on August 16, 2021, four days after the funds from Callaway County were deposited in her account, ▮ used funds from her BoA account ending in 9099 to purchase a cashier's check in the amount of $988,009.60:

Figure 3



13. As reflected in Figure 2 above, besides the re-transferred funds and $0.01 interest earnings, there were no credits to ▮'s BoA account ending in 9099 between the time the funds from Callaway County were deposited on August 12 and when the $988,009.60 was withdrawn by cashier's check on August 17, 2021. Accordingly, there is probable cause to believe that the $988,009.60 cashier's check is traceable to the fraud proceeds in its entirety.

14. The cashier's check was negotiated at Veridian Credit Union ("Veridian") on

August 17, 2021.

**Figure 4**



15. Bank records provided by Veridian confirm that on August 17, 2021, $988,004.60 ($5.00 less than the full balance) was deposited into ▮▮▮▮'s Veridian checking account ending in 8590.

**Figure 5**

| CHECKING- ▮▮▮▮ | | | | | | | 590 |
|---|---|---|---|---|---|---|---|
| 08/17/2021 to 08/31/2021 | | | Interest Rate: 0.050% | | | Dividends earned this period: $0.00 | |
| OVERDRAFT FEES | This Period $0.00 | Year-To-Date $0.00 | RETURNED ITEM FEES | This Period $0.00 | Year-To-Date $0.00 | TOTAL FEES | This Period $0.00 | Year-To-Date $0.00 |

**ACCOUNT ACTIVITY FOR CHECKING- ▮▮▮▮** — Starting Balance: $0.00

| Date | Description | Amount | Balance |
|---|---|---|---|
| 08/17/21 | Deposit | $988,004.60 | $988,004.60 |
| 08/17/21 | Withdraw | -$988,004.60 | $0.00 |
| 08/28/21 | POS Withdraw  STATE FARM  INSURAN800-956-6310  ILUS | -$292.88 | -$292.88 |
| 08/28/21 | Overdraft Protection Deposit | $292.88 | $0.00 |
| 08/30/21 | POS Withdraw  USPS PO 18243400  DES MOINES  IAUS | -$32.75 | -$32.75 |
| 08/30/21 | Overdraft Protection Deposit | $32.75 | $0.00 |
| 08/31/21 | POS Withdraw  ROSS STORE #2088  DES MOINES  IAUS | -$78.57 | -$78.57 |
| 08/31/21 | Overdraft Protection Deposit | $78.57 | $0.00 |

Ending Balance: $0.00

16. The same day, ▮▮▮ transferred the entirety of the $988,004.60 from her checking account ending in 8590 to a Veridian member equity savings account, number ▮▮▮▮ 8581 (the Subject Account). ▮▮▮ opened the Subject Account on the same day with a $5.00 new account deposit (presumably funded by the $5.00 that were not deposited to her checking account from the $988,009.60 cashier's check).

**Figure 6**

| SAVINGS- ▮▮▮▮ | | | | | | | 8581 |
|---|---|---|---|---|---|---|---|
| 08/17/2021 to 08/31/2021 | | | Interest Rate: 0.100% | | | Dividends earned this period: $36.86 | |
| OVERDRAFT FEES | This Period $0.00 | Year-To-Date $0.00 | RETURNED ITEM FEES | This Period $0.00 | Year-To-Date $0.00 | TOTAL FEES | This Period $0.00 | Year-To-Date $0.00 |

**ACCOUNT ACTIVITY FOR SAVINGS- ▮▮▮▮** — Starting Balance: $0.00

| Date | Description | Amount | Balance |
|---|---|---|---|
| 08/17/21 | New Account Deposit | $5.00 | $5.00 |
| 08/17/21 | Deposit | $988,004.60 | $988,009.60 |
| 08/27/21 | Withdraw | -$200,000.00 | $788,009.60 |
| 08/27/21 | Withdraw | -$20,000.00 | $768,009.60 |
| 08/27/21 | Withdraw | -$33,005.79 | $735,003.81 |
| 08/28/21 | Overdraft Protection Withdraw | -$292.88 | $734,710.93 |
| 08/30/21 | Withdraw | -$25,003.00 | $709,707.93 |
| 08/30/21 | Withdraw | -$25,000.00 | $684,707.93 |
| 08/30/21 | Overdraft Protection Withdraw | -$32.75 | $684,675.18 |
| 08/31/21 | Overdraft Protection Withdraw | -$78.57 | $684,596.61 |
| 08/31/21 | Dividends | $36.86 | $684,633.47 |

Ending Balance: $684,633.47

17. On or about August 17, 2021, ▉ attempted to wire funds from the Subject Account to offshore accounts. Veridian did not process these transfers, but it did not freeze the Subject Account at that time. Between August 27 and September 2, 2021, ▉ withdrew over $325,000 from the Subject Account using counter checks before Veridian froze the Subject Account.

18. As of November 30, 2022, $657,299.16 remain in the Subject Account. Bank account records for the Subject Account do not show any deposits into the account between August 17, 2021, and the present, aside from the initial $5.00 opening fee and the $988,004.60 transfer from her checking account. The Subject Account has continued to accrue value through monthly dividends payments. Accordingly, there is probable cause to believe that funds presently in the Subject Account are directly traceable to proceeds of wire fraud.

19. On April 29, 2022, Special Agents from FBI's Omaha Division interviewed ▉. ▉ reported that she is a widow with children residing in Arizona. She admitted to being lonely and looking for affection through online relationships. Based on my training and experience, this is a common profile of a person targeted by online scammers for defrauding and manipulation as money mules to launder proceeds derived from online scams and frauds.

20. ▉ reported to Special Agents that on January 6, 2020, she initiated conversation through Facebook with an account using the profile name "Denman Lee." Lee described himself to ▉ as a middle-aged white male working on an oil rig in Scotland. ▉ reported that she and Lee communicated frequently over a period of almost two years through Facebook messenger, telephone calls, and text messages. The two made plans to meet in Des Moines, Iowa, but ultimately never met after Lee provided an excuse for why he was no longer available. Based on my training and experience, this virtual relationship between ▉ and

"Lee" is prototypical of online romance scams.

21. According to ▉, in August 2021, Lee told ▉ he wanted to gift her approximately $1,000,000 in proceeds from his oil rig work. On or around August 11, 2021, Lee called ▉ and told her to check her Bank of America account ending in 9099 for the money he promised, which she did. ▉ confirmed the new deposit in the account for $993,498. ▉ acknowledged that she had never heard of Little Dixie and had no relationship with Callaway County, Missouri. ▉ reported that she believed the money she received was from Lee and that she had no idea it was stolen money.

22. Despite Lee's initial promise that the funds were a gift to her, ▉ remarked that Lee on multiple occasions instructed ▉ to disburse the funds for various needs of his own. Based on my training and experience, the transfer of substantial funds to ▉'s account and subsequent requests by Lee to transfer the funds elsewhere is consistent with common methods online scammers use to launder their illicit proceeds into the banking system using intermediaries.

23. On August 16, 2021, after BoA refused multiple requests by ▉ to transfer funds from the account ending in 9099, ▉, withdrew $998,009.60 using a cashier's check and deposited the funds into ▉'s Veridian savings account ending in 8590. The funds were successfully deposited on August 17, 2021, and that same day ▉ created the Subject Account, ending 8581, and deposited $998,009.60.

24. Following transfer into the Subject Account, ▉ reported that Lee instructed ▉ to wire $425,000 for him to complete the purchase of a home from a "Gail Heurung." Veridian refused the transfer because they could not locate anyone by that name attempting to sell property. According to ▉, Lee then directed ▉ to purchase cashier's checks and mail them to other parties for various reasons. Lee also directed ▉ to purchase a car for herself,

but subsequently told her to resell it and send him the proceeds. Based on my training and experience, these actions are consistent with attempts by an online scammer to layer and integrate the proceeds of frauds using an intermediary money mule. ▊ reported that she ultimately became suspicious of Lee and ended their relationship after Lee provided varying explanations as to where to send money and why.

## **Applicable Seizure and Forfeiture Standards**

25. I am advised that in a forfeiture case, the Government has the initial burden of showing probable cause to believe that a substantial connection exists between the property and the criminal activity. *United States v. One 1987 Mercedes Benz 300E*, 820 F. Supp. 248, 251 (E.D. Va. 1993). "Probable cause" means a reasonable ground for belief beyond more suspicion but need not amount to *prima facie* proof. *Id.* 251–52. In making the probable cause determination, courts may consider even information that might be inadmissible hearsay at trial. *Id.*

26. I am further advised that the Court may issue seizure warrants for both the civil seizure statute, 18 U.S.C. § 981(b), as well as the criminal seizure statutes, 18 U.S.C.§ 982(b)(1) and 21 U.S.C. § 853(f).

27. I am also advised that "a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28." 18 U.S.C. § 981(b)(3). Furthermore, "[i]n addition to the venue provided for in section 1395 of title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of the property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought." 18 U.S.C § 981(h).

28. Due to the liquidity of bank accounts, particularly in consideration of electronic banking, such as ATMs, telephonic banking and online banking, funds can be moved with great ease. Bank safeguards to protect accounts which have been restrained can be easily overridden, accidentally or purposefully, rending safeguards inadequate.

## Conclusion

29. Based upon the foregoing facts, my respective training and experience, and the training and experience of other Special Agents, I respectfully submit that there is probable cause to believe that the all funds presently held in the Subject Account at Veridian Credit Union, ending 8581, represents proceeds of a BEC in violation of Title 18 U.S.C. Section 1343 (wire fraud) and, as such, is subject to seizure and forfeiture pursuant to 18 U.S.C. Sections 981 and 982 and 21 U.S.C. Section 853.

30. Accordingly, there is probable cause to believe that entire balance remaining in the Subject Account, which as of November 30, 2022, was $657,299.16, is subject to forfeiture and seizure.

The foregoing is true and correct to the best of my information and belief.

Date: December 16, 2022

_____
Special Agent Aaron Volk
Federal Bureau of Investigation

Subscribed and sworn to me telephonically this 19th day of December 2022.

By telephone at 3:22 pm

_____
W. Brian Gaddy
UNITED STATES MAGISTRATE JUDGE

